UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JAMES D. EVANS**                                                               **PLAINTIFF**

**V.**                         **CIVIL ACTION NO.1:06CV1159 LTS-RHW**

**STATE FARM FIRE and CASUALTY COMPANY, ET AL.**     **DEFENDANTS**

### MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

The Court has before it the motion [57] of Fidelity National Insurance Company (Fidelity) for summary judgment. For the reasons set out below, this motion will be granted.

The relevant facts are not in dispute. James D. Evans (Evans) was a resident of Bay St. Louis, Mississippi, residing at 4013 Madagascar Street, at the time of Hurricane Katrina. His home was destroyed during the storm. At the time of the storm Evans had two property insurance policies in effect, a homeowners policy (Policy number 24B345940) issued by State Farm Fire and Casualty Company (State Farm) and a Standard Flood Insurance Policy (policy number 99018404552004) issued under the National Flood Insurance Act, 42 U.S.C. §4001, *et seq*., and sold to Evans by Fidelity. Evans sued both State Farm and Fidelity under these policies. The plaintiff's claim against State Farm has now been settled.

Fidelity has refused to pay Evans's flood claim on the grounds that Evans failed to timely file a sworn proof of loss as required by the federal regulations that establish the terms of the Standard Flood Insurance Policy. 44 C.F.R. Pt. 61, App. A(1). Evans contends a proof of loss was not required of him because the adjustor Fidelity assigned to evaluate his loss did not investigate his claim by making an inspection of Evans's property. Evans argues that since he had made no claim at the time the Fidelity adjustor made his report (discussed more fully below) there was no adjustment or settlement for him to disagree with, and that this disagreement is the event that the applicable federal regulations identify as the trigger for the insured's duty to file a proof of loss.

Hurricane Katrina destroyed Evans's insured dwelling on August 29, 2005. On August 31, 2005, David I. Maurstad (Maurstad), Acting Federal Insurance Administrator of the Federal Emergency Management Agency of the United States Department of Homeland Security promulgated a "Waiver of the Proof of Loss Requirement in the Standard Flood Insurance Policy (SFIP)." Submission of a proof of loss in support of a flood insurance claim is normally required within sixty days of a covered loss. The waiver Maurstad promulgated extended the time for filing a proof of loss to the one-year anniversary of the loss. The waiver states, in relevant part:

> *I am waiving the requirement . . . for the policyholder to file a proof of loss prior to receiving insurance proceeds. Instead, payment of the loss will be based on the evaluation of damage in the adjuster's report. This means the requirement . . . that losses will be payable 60 days after the insurer receives the policyholder's proof of loss (or within 90 days after the adjustor files a report signed and sworn to by the policyholder in lieu of a proof of loss) will not apply. Instead, the loss will be payable as soon as practicable after the insurer receives the adjuster's report. . . . In the event a policyholder disagrees with the insurer's adjustment, settlement, or payment of the claim, a policyholder may submit to the insurer a proof of loss within one year from the date of the loss. The proof of loss must meet the requirements [stated in the applicable federal regulations]. The insurer will then process the policyholder's proof of loss in its normal fashion. . . . For example, a policyholder who suffered a flood loss from Hurricane Katrina on August 23, 2005, and disagrees with the insurer's decision based on the adjuster's report has until August 22, 2006, to file the proof of loss detailing the area(s) of disagreement.*

In support of its motion Fidelity has submitted the affidavit of Deborah Price (Price), its vice president of claims. According to this affidavit, which is uncontradicted in the record before me, Fidelity entered an "automatic claim" for Evans on September 7, 2005. This "automatic claim" was entered based on the location of Evans's insured property. Fidelity assigned Roy C. Helton (Helton), an independent adjuster, to inspect and adjust Evans's flood loss. Helton's Flood Damage Closing Report, dated December 13, 2005, and attached as an exhibit to Price's affidavit, states, in relevant part:

> **ADJUSTMENT & DAMAGE ISSUES**
>
> **BUILDING ADJUSTMENT** *This is an Erroneous Assingment [sic] No inspection was made due to insured adamently [sic] stating that water DID NOT enter dwelling. No claim at this time.*
>
> **CONTENTS ADJUSTMENT** *There is no claim at this time*
>
> **COVERAGE ISSUES** *None*
>
> **PRIOR LOSS INFORMATION** *None Stated*
>
> **RECOMMENDATIONS**
>
> *This adjustment was made in accordance with policy guidelines and limitations When contacted insured stated that he had no claim Water did not enter his home and he did not want an inspection of the insured dwelling We feel that this is an errononous (sic) assignment and have no claim at this time.*

At some time prior to February 8, 2006, Evans contacted Fidelity and made a claim for flood damage. On February 8, 2006, Fidelity sent a letter to Evans stating, in its entirety:

> *Dear Mr. Evans:*
> *We acknowledge the claim you presented for flood damage to your property. The adjuster assigned to inspect your property reports there were no flood damages to your covered property as a result of this flood event.*
> *Should you have any questions, please contact us at our toll-free number, 1-800–752-9472.*
> *By this letter we do not intend to waive or relinquish any of our rights or defenses, either listed or unlisted under this policy of insurance.*

Although Evans gave notice of his claim to Fidelity at some time before February 8, 2006, he has never filed a sworn proof of loss as required by the Standard Flood Insurance Policy. 44 C.F.R. Pt. 61, App. A(1). This lawsuit was filed November 20, 2006.

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp*. Inc., 936 F.2d 805, 809 (5th Cir.1991); F. R. Civ. P. 56(c).

All of the terms of a Standard Flood Insurance Policy are established by federal regulations. 44 C.F.R. Pt. 61, App. A(1) An insurer who sells a flood insurance policy under the National Flood Insurance Act has no authority to change these policy terms or to waive or change the requirements established by these regulations. The terms of the Standard Flood Insurance Policy for residential buildings such as Evens's home provides, in relevant part:

> *J. Requirements in Case of Loss*
>
> *In case of a flood loss to insured property, you must:*
>
> *1.     Give prompt written notice to us;*
>
> *2.     As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;*
>
> *3.     Prepare an inventory of damaged property showing the quantity, description , actual cash value, and amount of loss. Attach all bills, receipts, and related documents;*
>
> *4.     Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:*

  *a.* *The date and time of loss;*

  *b.* *A brief explanation of how the loss happened;*

  *c.* *Your interest (for example, "owner") and the interest, if any, of others in the damaged property;*

  *d.* *Detail of any other insurance that may cover the loss;*

  *e.* *Changes in title or occupancy of the covered property during the term of the policy;*

  *f.* *Specifications of damaged buildings and detailed repair estimates;*

  *g.* *Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;*

  *h.* *Details about who occupied any insured building at the time of loss and for what purpose; and*

  *i.* *The inventory of damaged personal property described in J.#. above.*

44 C.F.R. Pt. 61, App. A(1), Art. VII(J)

  According to the report of Helton, the adjustor assigned to Evans's "automatic claim," Evans stated that he had no flood damage to the insured property. In light of this statement, which is uncontradicted in the record before me, there was no need for Helton to make a site inspection of the Evans property. In light of this statement to the adjustor, Evans cannot now persuasively argue that Helton's accepting Evans's own statement that there was no flood damage and closing his investigation on that basis was improper or unreasonable.

  Once Evans determined that his statement to the adjustor was premature or otherwise inaccurate, a determination Evans made before February 8, 2006, it was incumbent on Evans to submit a proof of loss as required by the applicable federal regulations. I do not believe Fidelity's letter of February 8, 2006, can be read in any other way than as a denial of Evans's flood insurance claim based on the information in the adjustor's report, and Evans obviously disagrees with Fidelity's denial of his claim.

  The requirement that the insured submit a sworn proof of loss in support of a claim under the National Flood Insurance Act is strictly enforced. *Wright v. Allstate Insurance Co.*, 415 F.3d 384 (5th Cir.2005); *Shuford v. Fidelity*, C.A. 05-0583-CG-B (S.D.Ala. Dec.18, 2006). Written notice of a claim without the sworn proof of loss required by the regulations is not sufficient to perfect a claim under the National Flood Insurance Act. *Gowland v. Aetna*,143 F.3d 951 (5th Cir.1998). In these circumstances, FEMA is not estopped to assert the insured's failure to provide the proof of loss as a

defense under a Standard Flood Insurance Policy. ; *Forman v. FEMA*, 138 F.3d 543 (5th Cir.1998)  These cases establish that the failure to timely file a proof of loss in compliance with the regulatory requirements is a valid basis for denying a claim.

Evans contends that the August 1, 2005, letter from Maurstad was a complete waiver of the requirement that he submit a proof of loss.  The terms of the letter do not support this contention.  The letter waives the requirement that a proof of loss be submitted within 60 days, but it does not purport to waive the requirement of submitting a proof of loss entirely.  The letter extends the deadline for submission of the proof of loss from 60 days to one year, but it cannot be read to dispense entirely with the requirement that the insured submit his proof of loss in accordance with the requirements of the Standard Flood Insurance Policy.  Evans's flood insurance claim was denied on February 8, 2006, and his deadline for filing his proof of loss was August 28, 2006.

Evans's state law claim for attorneys' fees is preempted by the National Flood Insurance Act.  *Wright v. Allstate Insurance Co.*, 415 F.3d 384 (5th Cir.2005). The National Flood Insurance Act does not provide a private cause of action for extra-contractual claims.  *Wright v. Allstate Insurance Co.*, 2007 WL 2693087 (5th Cir.2007).

In accordance with the rulings of the Fifth Circuit set out above, Fidelity's motion for summary judgment [57] will be granted.  An appropriate order granting the motion and dismissing this case will be entered.  Fidelity's supplemental motion for summary judgment [59] and its motion to sever [43] are moot.

**DECIDED** this 18th day of September, 2007.

> s/ L. T. Senter, Jr.
> L. T. SENTER, JR.
> SENIOR JUDGE